No.——

First Circuit

PENTON v. SNELL

(March 7, 1928.  Opinion and Decree.)
(April 11. 1928.  Rehearing Refused.)
(June 4, 1928.  Writ of Certiorari Denied by Supreme Court.)

(*Syllabus by the Editor*)

1. **Louisiana  Digest — Automobiles — Par.
4(a), 4(d).**

Where the driver of an automobile upon seeing a motor bus enter a narrow bridge makes no effort to stop his excessive speed until it was too late to stop by the methods usually employed for that purpose, he is guilty of negligence and liable for the damages resulting.

2. **Louisiana  Digest — Automobiles — Par.
4(a).**

The driver of a motor bus was not at fault where he was driving thirty-five miles per hour on the open road and slowed down to twenty miles per hour upon entering a narrow bridge, stopping his car as far to the right as soon as possible after he saw the danger of collision with a car traveling in the opposite direction.

Appeal from the District Court, Parish of Tangipahoa. Hon. Columbus Reid, Judge.

Action by Martin Penton, doing business as Hammond Stage Lines, against O. C. Snell.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

John J. Jackson, of Hammond, attorney for plaintiff, appellee.

Ellis and Ellis, of Amite, attorneys for defendant, appellant.

ELLIOTT, J. Omnibus No. 12, of the Hammond Stage Lines belonging to Martin Penton, was struck and badly damaged by an automobile belonging to and driven by O. C. Snell, in a collision on the Baton Rouge and Hammond Highway, about three miles east of Denham Springs. Penton alleges that the collision was due to the negligence and carelessness of said Snell in driving his car, and that he is therefore responsible for the damage done to his omnibus. That Snell was driving at an excessive speed, that his brakes were not in good condition, that immediately after the occurrence he admitted that the fault was his and promised to make good the damage, etc.

Defendant denies the negligence alleged against him. He alleges that the collision was due to the negligence and carelessness of the driver of plaintiff's omnibus. That it was being driven faster than the law permits. That if plaintiff's driver had kept on the right side of the road coming east, the side on which he belonged, the omnibus and defendant's car would have passed each other in safety. Defendant alleges that as he turned a curve in the road and came in sight of a bridge, he saw plaintiff's omnibus coming on the other side, each being at the time about the same distance from the bridge. That upon seeing the omnibus he immediately applied his brakes, but for some reason unknown to him, they stuck and would not work. That his car, as a result, zig-zagged back and forth across the road. That just as he got back to the right side of the road going west, plaintiff's omnibus came across the bridge at an excessive speed and struck and demolished his automobile. That plaintiff's driver had already seen that defendant's automobile was out of control before he entered on the bridge, and in time to have stopped on the western side of the bridge. That plaintiff's driver, should, under the circumstances, have stopped on the western side of the bridge, and not have entered on it until defendant had righted his car. That if plaintiff's driver had pursued this course, the collision would not have occurred.

Defendant alleges the loss of his automobile, loss of time, and personal injuries, a total of $2500.00, which he claims of plaintiff in reconvention.

The district judge giving reasons in writing, rendered judgment in favor of the plaintiff as prayed for, except as to the item of $1000.00, claimed by plaintiff on account of depreciation in value of his omnibus, due to the fact that it had been in a collision. The Court reduced this item to $350.00, and rendered judgment in favor of the plaintiff for $1350.00.

Defendant appealed.

There is a conflict in the evidence as to the speed at which defendant was running at the time he applied his brakes in his effort to stop before getting to the bridge over which plaintiff's omnibus was crossing at the time. The highway was about 25 feet wide, but the bridge was only about 16 feet wide and 25 or 30 feet long. The omnibus and the automobile could have passed each other on the bridge in safety, by each going slow and keeping to their respective sides, but in the emergency of the moment neither felt that it was possible to do so. Defendant's conduct indicates that his first impulse was, that by running fast he would get to the bridge and cross it first, but as he got within 100 feet of the bridge, he saw that

the omnibus had already reached it, and was on it, coming across. He then undertook to stop. He applied his brakes suddenly and hard, and cut off the power, but the speed of his automobile was so great that it kept up its momentum, skidding, zig-zagging and swerving back and forth from one side of the road to the other under the brakes, until it struck and demolished itself against the omnibus, just after the omnibus had left the bridge. Two witnesses apparently without interest to mis-state the facts were on the highway going west about a mile apart. Defendant passed them going west so quick, about four or five miles east of the bridge in question, that they each, judging by the speed at which they were running, estimated that defendant was running at the time 40, 45 or 50 miles an hour.

Mr. Snell says that at the time he put his foot on his brakes to stop, he was going 25 miles an hour by his speedometer. A party riding with Mr. Snell says in one part of his evidence, that Mr. Snell in his opinion, was driving on the road about 25 miles an hour, but in another place, he says that he never paid any attention to the speed they were going. Defendant expressed the belief that the zig-zagging and swerving which took place, was due to something getting in his brakes. A piece of gravel, he says, might have gotten under one of his brake bands. In one place he says that his left brake caught; in another that his left brake held and his right would not hold; and in another, that they stuck. He says that his son fixed his brakes about three days before the occurrence. His son, an automobile mechanic, testifies that he did fix the brakes as his father claimed. It was late in the evening when the collision took place. Defendant had been driving all day and his brakes had worked all right every time they were applied, except

on this occasion. Mr. Snell, speaking of his effort to stop, says:

"When I reached about 100 feet of the bridge or when I first spied the bus, I pulled my foot off the accellerator and mentioned to Mr. White, there comes the bus hogging the road. I removed my foot from the accelerator when I first saw the bus, and when I came within about 100 feet of the bridge, I said to White, we are going to hit the bridge together. I just started to slow up, I put my foot on the brake and immediately I went to zig-zagging across the road as my right hand left hand wheel brakes, etc."

"Q. When did you apply the brakes?
"A. Approximately 100 feet from the end of the bridge.
"Q. What happened when you applied the brakes?
"A. The left wheel front wheel brake caught and throwed me left, I pulled my foot off and pulled back to my side, put in on again and it did the same thing.
"Q. What were you trying to do?
"A. Check up my speed and keep from being on the bridge at the same time as the bus was."

The result of the impact, when defendant's car, a six cylinder sedan, after zig-zagging and swerving back and forth across the road several times under as many applications of the brakes, struck the omnibus, is the most satisfactory evidence of the speed at which defendant was running at the time he applied the brakes and tried to stop. Defendant's car was crushed by the impact into a complete wreck, and the omnibus was badly damaged.

We are satisfied that at the time defendant came within 100 feet of the bridge and tried to stop, he was running close to 50 miles an hour. The highway is graveled, and it is possible that something did get under one of defendant's brake bands, but we think it more likely, that the gravel, under the force exerted against it when the brakes were applied, did not hold as

firm in some places as it did at others, and that the swerving was due to that cause. Defendant says that at the moment he applied the brakes the zig-zagging commenced, the moment he took his foot off, the car righted itself, the moment he re-applied the brakes, the swerving and zig-zagging re-commenced, etc. It is quite probable that there was nothing the matter with defendant's brakes, but be that as it may, the evidence shows that when defendant saw the bridge, the omnibus was nearer to it than he was; so much so, that it had the right of way, and defendant should have commenced to stop then, and could have stopped, if he had commenced in time. He was at fault in not commencing to stop sooner. He made no effort to stop his excessive speed until it was too late to stop by the methods usually employed for that purpose. Supposing his brakes to have worked all right, defendant's car could not be stopped, except by impact with something capable of doing so.

Defendant's conduct immediately after the wreck indicates that he felt himself to blame. As soon as he had extricated himself from the wreckage, he addressed the driver of the omnibus in the presence of the passengers, saying that he was driving fast, that it was late and he was in a hurry, that his brakes were out of order and that he had neglected to have them fixed, that he would make good the damage, etc. Defendant denies making these statements, but the fact is so well established that we are satisfied he used expressions to that effect.

Defendant urges that plaintiff's omnibus was running too fast and that the driver of same saw that defendants' automobile was out of control before the omnibus entered on the bridge, and that the driver should have stopped on the western side of the bridge until defendant had righted his car. The only parties in a position to speak with any certainty as to the speed of the omnibus as it approached the bridge, were the driver and the passengers. Defendant offered some evidence that plaintiff's omnibus had, on other occasions, run faster than the law permits, and kept the middle of the road, but we are satisfied that on the present occasion, the omnibus approached the bridge at about 35 miles an hour, and slowed down to about 20 miles as it came to the bridge, and crossed it at about that rate of speed, quickening in speed somewhat as it left the bridge in an effort to avoid defendant's car. Its speed, in our opinion, was reasonable. As for stopping on the western side of the bridge, the evidence of plaintiff's driver and of the passengers who observed matters, is to the effect that defendant's zig-zagging and swerving was not noticed until just about the time the omnibus reached the bridge.

The omnibus could not be stopped at once; it required some little distance in which to do that, and the evidence of the driver and of the passengers is to the effect that it could not have been stopped before the collision, except by stopping on the bridge. If it had stopped on the bridge and undertook to back off, the delay would have invited the collision. The proper course was to go ahead and get off the bridge if possible before defendant could reach it, and turn to the left going east upon leaving it, because at the time plaintiff's driver left the bridge, defendant was on the left hand side of the road going west, and if plaintiff's driver had not turned as he did, a head on collision was inevitable. Plaintiff's driver exercised good judgment. He could not anticipate that defendant would swerve back to the right side, going west in his career as he did. The duty of having his car under

control before he got to the bridge was with the defendant. Therefore the fault of the collision was with him, as well as responsibility for the damage.

The plaintiff alleges that his damage amounts to $1970.00. But all the items claimed when added up, amount to but $1738.60, which is $231.40 less than the total sum claimed. The depreciation in value which he claims that his omnibus has sustained as a result of having been in a collision is shown by his evidence to be uncertain. It seems that loss in price is anticipated in case he should have to sell it. In case he does not have to sell the omnibus, there will be no loss.

Plaintiff testifies that one of the springs on the omnibus hangs low since the collision, and does not carry its load as well as the others. But it appears that the matter could be adjusted for $15.00 or $20.00. The matter was also observed soon after the omnibus was returned to service, and no explanation was made why it was not fixed, and the item claimed with the other damages.

Leaving out the small matter mentioned, according to plaintiff, the omnibus is now giving as good service as it did before. It is our conclusion that plaintiffs' claim on account of depreciation is more speculative than real, and we have decided to disallow this item. The sum of all the other items is in amount $738.60. We agree with the district judge that all of the items claimed must be recovered, except that one on account of depreciation.

The judgment appealed from in favor of the plaintiff is reduced to $738.60, and as thus amended it is affirmed.

The demand of the defendant against the plaintiff in reconvention is rejected. Defendant to pay the costs in the lower court, plaintiff, the cost of appeal.